1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

VICKY WALL, individually,

10

Plaintiff,

CASE NO. C07-0363-JCC

11

v.

ORDER

12

WAL-MART ASSOCIATES INC., a foreign
corporation doing business as Wal-Mart
Supercenter #2595,

13

14

Defendants.

15

16

17

18

19

        This matter comes before the Court on Defendant Wal-Mart Stores, Inc.'s Motion for Summary

Judgment (Dkt. No. 25), Plaintiff Vicky Wall's Response in opposition (Dkt. No. 29), Defendant's Reply

(Dkt. No. 31), and Defendant's Supplemental Reply (Dkt. No. 35). The Court has carefully considered

these papers, together with their supporting declarations and exhibits, and has determined that oral

argument is not necessary. The Court hereby GRANTS the motion and rules as follows.

20

I.      BACKGROUND

21

22

23

24

        Plaintiff Vicky Wall brings this suit against Defendant Wal-Mart Stores based on a slip-and-fall

accident that occurred on July 25, 2005. (Compl. ¶ 3 (Dkt. No. 1 at 8–9).) Plaintiff testified that she

entered the Tulalip/Marysville, Washington, Wal-Mart store at approximately 7:45 p.m., and that she did

not notice anything on the floor near the entry/exit at that time. (Wall Dep. 19:2–11, 26:9–11 (Dkt. No.

25

26

ORDER – 1

1   26 at 9, 11).) She remained in the store for fifteen minutes or less, and made a few purchases. (*Id*. at

2   22:8–17.) After she left the checkout stand, on her way to the exit, Plaintiff slipped on a substance on the

3   floor and fell on her tailbone and right side. (*Id*. at 23:6–10; 27:3–7.) After the fall, Plaintiff saw that the

4   substance was white and was in a couple of "round blobs" about the size of a fifty-cent piece or smaller.

5   (*Id*. at 27:16–24.) Helen Haskell, a Wal-Mart cashier who was stationed at a register about six or seven

6   steps from where Plaintiff fell, heard someone yell out and immediately responded to Plaintiff and asked if

7   she was okay. (Haskell Decl. ¶ 8 (Dkt. No. 27 at 2).) Ms. Haskell recalls wiping a substance off the floor

8   that was light in color; she thought it resembled vomit. (*Id*. at ¶ 9.) Plaintiff asked to speak to the

9   manager, and while she was waiting, heard an employee at the customer service counter tell the manager,

10  "She slipped on hair product." (Wall Dep. 41:7–11 (Dkt. No. 26 at 13).) Plaintiff testified that had she

11  been looking at the floor when she exited, she is not sure whether she would have noticed the substance.

12  (*Id*. at 43:15–17.) Plaintiff did not see any evidence indicative of a recent hair product spill, such as a

13  bottle or packaging, and is not certain what the substance was. (*Id*. at 43:1–8.) She also testified that she

14  had no idea how long the substance had been on the floor, and that no one at Wal-Mart made any

15  comments to her about that issue. (*Id*. at 99:4–10.)

16          Ms. Haskell, the cashier, testified that she was responsible for monitoring the floor around her

17  area for dangerous conditions, and that she had a clear view of the entryway floor where Plaintiff fell.

18  (Haskell Decl. ¶ 4 (Dkt. No. 27 at 1).) Ms. Haskell did not notice any substance or other foreign objects

19  on the floor from the time she started her shift at 6:00 p.m. until Plaintiff fell nearly two hours later. (*Id*.

20  at ¶ 6.) Ms. Haskell did not see anyone spill anything on the floor, nor did anyone report any spills. (*Id*.)

21  Ms. Haskell testified that she had no idea how the substance came to be on the floor. (*Id*. at ¶ 10.)

22          Additionally, Timothy Labrensz, the manager on duty at the time of Plaintiff's fall, testified that he

23  had been on shift for several hours prior to the accident, and that he did not see and was not informed of

24  a spill occurring in the store that day. (Labrensz Decl. ¶ 5 (Dkt. No. 28 at 2).) According to Mr.

25  Labrensz, if there had been a spill during his shift, he would have been informed about it. (*Id*.)

26  ORDER – 2

1    Plaintiff alleges that Defendant was negligent, and is liable for her injuries. (Compl. ¶ 5 (Dkt. No.

2    1 at 9).) Specifically, Plaintiff alleges that Defendant (1) "fail[ed] to take adequate precautions to protect

3    its business invitees from known hazards;" (2) "fail[ed] to properly clean up and remove hazardous

4    conditions that exposed its business invitees to peril;" and (3) "fail[ed] to warn or guard its business

5    invitees from a dangerous condition[.]" (*Id*.) Defendant asks the Court to dismiss Plaintiff's claims on

6    summary judgment, on grounds that Plaintiff has offered no evidence that Defendant had actual or

7    constructive notice of the dangerous condition. (Def.'s Mot. 1 (Dkt. No. 25).)

8    **II.    APPLICABLE LAW**

9    Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file,

10   and any affidavits show that there is no genuine issue as to any material fact and that the movant is

11   entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "A 'material' fact is one that is relevant

12   to an element of a claim or defense and whose existence might affect the outcome of the suit." *T.W. Elec.*

13   *Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party bears

14   the initial burden of showing that no genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v.*

15   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  If the moving party meets this initial burden, then the

16   party opposing the motion must set forth facts showing that there is a genuine issue for trial. *See T.W.*

17   *Elec. Serv.*, 809 F.2d at 630. The party opposing the motion must "do more than simply show that there

18   is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "In response to a

19   summary judgment motion, . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth

20   by affidavit or other evidence specific facts, . . . which for the purposes of the summary judgment motion

21   will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); FED. R. CIV. P.

22   56(e). If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the

23   moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

24   (1986).

25   //

26   ORDER – 3

1

2 **III.    ANALYSIS**

3        "In Washington the general rule governing liability for failure to maintain business premises in a

4 reasonably safe condition requires that the plaintiff prove (1) the unsafe condition was caused by the

5 proprietor or its employees, or (2) the proprietor had actual or constructive knowledge of the dangerous

6 condition." *Coleman v. Ernst Home Ctr., Inc.*, 853 P.2d 473, 475 (Wash. Ct. App. 1993); *see also*

7 *Schmidt v. Coogan*, 173 P.3d 273, 492 (Wash. 2007) ("In a premises liability claim, the plaintiff must

8 establish that the defendant either caused the dangerous condition or knew or should have known of its

9 existence in time to remedy the situation.") The Washington Supreme Court has explained that:

10        Constructive notice arises where the condition has existed for such time as would have
          afforded [the proprietor] sufficient opportunity, in the exercise of ordinary care, to have
11        made a proper inspection of the premises and to have removed the danger. . . . The
          plaintiff must establish that the defendant had, or should have had, knowledge of the
12        dangerous condition in time to remedy the situation before the injury or to warn the
          plaintiff of the danger.

13
*Ingersoll v. DeBartolo, Inc.*, 869 P.2d 1014, 1015 (Wash. 1994) (internal quotation omitted). Further:
14
          Ordinarily, it is a question of fact for the jury, whether under all the circumstances, a
15        defective condition existed long enough so that it would have been discovered by an
          owner exercising reasonable care. The permissible period of time for the discovery and
16        removal or warning of the dangerous condition is measured by the varying circumstances
          of each case. To a large extent, it depends upon the opportunity for discovery open to the
17        defendant's employees by reason of their number, their physical proximity to the hazard,
          and, in general, the likelihood they would become aware of the condition in the normal
18        course of duties. *The decisive issues, therefore, are the length of time the condition is
          present and the opportunity for discovery under the circumstances proved*. While the
19        plaintiff must prove that the defective condition existed long enough so that by the use of
          reasonable care it should have been discovered and remedied, that fact, like other facts,
20        may be proved by circumstantial as well as by direct evidence. . . . However, *where
          circumstantial evidence leads only to speculation, a verdict cannot be based on
21        inferences drawn from the evidence*.

22 *Coleman*, 853 P.2d at 476–77 (quoting *Morton v. Lee*, 450 P.2d 957, 959–60 (Wash. 1969)) (emphasis

23 added).

24        In the instant case, Plaintiff argues that Defendant had constructive notice of the substance spilled

25 on the floor because (1) it is undisputed that Plaintiff did in fact slip on a substance in Wal-Mart, and (2)

26 ORDER – 4

according to Plaintiff, this substance must have been on the floor for at least two hours prior to Plaintiff's

fall, which is an important consideration in determining whether Defendant had constructive notice. (Pl.'s

Resp. 6 (Dkt. No. 29).) Plaintiff submits no evidence to support her argument, even though the Court

specifically extended the fact discovery period to allow Plaintiff to conduct further investigation.[1] (*See*

Minute Order by Judge Zilly Feb. 26, 2008 (Dkt. No. 33).) The only evidence that Plaintiff cites to

support her conclusion that the substance must have been on the floor for at least two hours are the

statements in Ms. Haskell's and Mr. Labrensz's declarations, filed by Defendant. Plaintiff argues that

because Ms. Haskell testified that she did not notice anyone depositing any substances upon the floor for

two hours prior to the fall, the substance must have been on the floor at least two hours before the

accident. In addition, Plaintiff argues, in essence, that because Mr. Labrensz did not hear about any spills

during his shift, and he had been on shift for at least a few hours prior to the fall, the substance must have

been spilled prior to Mr. Labrensz's shift.

The Court is not persuaded that the testimony of Ms. Haskell or Mr. Labrensz is enough to rebut

Defendant's showing that there is insufficient evidence of constructive notice. At most, presented with

this testimony, the jury could only speculate about how long the substance had been on the floor. The

testimony of Mr. Labrensz supports Defendant's position that it did not have actual notice of the spill,

which Plaintiff does not challenge. Ms. Haskell's testimony evinces a lack of evidence regarding the

length of time the spill had been on the floor. Ms. Haskell testified that although she was only six or seven

steps away, she did not see the spill before Plaintiff's fall. Plaintiff puts forth no affirmative evidence,

circumstantial or otherwise, showing how long the spill had been there, such as any packaging visible on

---

[1]Defendant originally submitted its motion on January 18, 2008. In opposition, Plaintiff's counsel submitted, in part, a declaration stating that Defendant "asks the Court to make this [summary judgment] determination prematurely, when the parties have not finished discovery." (Penfield Decl. ¶ 2(b) (Dkt. No. 30 at 2).) Plaintiff requested that the Court renote the summary judgment motion and extend the discovery period to allow Plaintiff to depose Mr. Labrensz and Ms. Haskell in order that Plaintiff "be able to prepare an appropriate response" to the motion. (*Id*. at ¶ 2(e).) The Court granted Plaintiff's request. However, Plaintiff did not file a supplementary response, and the deadline to do so has now passed.

ORDER – 5

1   the floor nearby, or any witnesses who may have noticed the substance some time earlier. This case is

2   therefore unlike *Schmidt v. Coogan*, 173 P.3d 273 (Wash. 2007), in which the plaintiff offered evidence

3   that a shampoo spill on which she slipped was visible to employees from the cash registers and that

4   during the time she was at the checkout stand none of the employees made any effort to clean it up. *Id.* at

5   275. Instead, the Court finds the facts of this case analogous to those presented in *Coleman v. Ernst*

6   *Home Ctr., Inc.*, 853 P.2d 473 (Wash. Ct. App. 1993). In *Ernst*, the plaintiff tripped in a hole in the

7   carpeting of the entryway of a store. The court of appeals affirmed the trial court's determination that

8   there was insufficient evidence of constructive notice to submit to the jury where there was:

9   
10   
11   > no evidence that any cashier, or any other store employee, actually saw the hole in the carpeting before [the plaintiff] fell. There is no clear evidence concerning what caused the carpet pieces to come loose or as to how long the hole in the carpeting had been present before [the plaintiff] tripped. [The plaintiff] testified that she did not notice the hole when she entered the store. She noticed the hole as she left the store only because it caused her to trip and fall.

12   
13   *Id.* at 474. Similarly, in *Carlyle v. Safeway Stores, Inc.*, 896 P.2d 750 (Wash. Ct. App. 1995), where the

14   plaintiff offered no evidence that a shampoo spill had been on the floor for a long enough time to afford

15   the store a sufficient opportunity to have made a proper inspection and to have removed the hazard, the

16   court of appeals recognized that the plaintiff could not prove constructive notice. *Id.* at 752. Likewise, in

17   the instant case, Plaintiff has offered insufficient evidence for the jury to reasonably conclude that the

18   unidentified substance had been on the floor for a sufficient time to afford Defendant enough time to have

19   found and removed the hazard before Plaintiff slipped on it. While Plaintiff's injuries are regrettable,

20   "owners of property are not insurers against all happenings that occur on the premises." *Coleman*, 853

21   P.2d at 478. Plaintiff has not carried her burden with regard to the instant motion, and accordingly, the

22   Court DISMISSES Plaintiff's claims with prejudice.

**IV.    CONCLUSION**

23   
24          For the foregoing reasons, the Court GRANTS Defendant Wal-Mart Stores, Inc.'s Motion for

25   Summary Judgment (Dkt. No. 25). Accordingly, Plaintiff's claims are DISMISSED in their entirety, and

26   ORDER – 6

1    the Clerk is DIRECTED to close the case.

2        DATED this 14th day of April, 2008.

3

4

5                                              John C. Coughenour
                                               UNITED STATES DISTRICT COURT
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER – 7